IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JOSEPH E. GUE, | ) |
| Plaintiff, | ) |
| v. | ) CV-98-AR-1684-M |
| CITY OF GADSDEN, | ) |
| Defendant. | ) |

FILED
99 JUL 13 PM 2:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL 13 1999

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment by defendant, City of Gadsden ("Gadsden"). Plaintiff, Joseph E. Gue ("Gue"), is 48 years old and a police officer employed by Gadsden. He brings suit pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), as well as for breach of contract under state law. Gue originally claimed that Gadsden had retaliated against him for having filed a claim for worker's compensation benefits. Upon Gadsden's motion, that claim was earlier dismissed by this court. *See Memorandum Opinion and Order*, Sept. 29, 1998. For the reasons set forth, *infra*, the court finds that Gadsden's present motion is due to be partially granted with regard to Gue's contract claims, and denied as to all other claims.

## Undisputed Pertinent Facts

Gue has been employed by Gadsden as a police officer since 1990. Originally assigned to the patrol division, he was assigned to the traffic unit within the patrol division approximately one year after beginning his employment. Gue suffered a serious job-related back injury in January of 1993 and remained on medical leave until October 1994. When he returned to work, he was initially placed in the patrol division again, but was reassigned to the traffic unit in January, 1995, upon the first opening.

Sergeant Richard Herring ("Herring") was the "Officer in Charge" of the traffic unit. Although Herring does not make final decisions regarding which officers attend training schools, he makes recommendations to a "training committee" which usually follows his advice. After the committee requested recommendations in early 1996, Herring recommended Gue to attend radar instructor school later in the year, and he recommended Rodney Couch ("Couch") for a traffic fatality investigator's school. The committee accepted the recommendations. As a result, both Couch and Herring himself, who had not yet attended the investigator's school, were scheduled to received training in June, 1996. However, because there were no openings in the June class for the two-week investigator's school, their training was postponed and rescheduled for another class later in the fall.

Couch transferred out of the traffic unit prior to the next class, so Herring recommended that Scott Farris attend the training instead. The committee accepted this recommendation. Therefore Farris and Herring attended the traffic fatality investigator training school for two weeks in October and November, 1996.

Gue was disappointed that Herring had not recommended him for the investigator's school. He deemed the investigator school important for possible career advancement, and he considered himself more qualified than the other men Herring recommended. Even Farris, who attended the training, questioned Herring as to why Gue had not been selected. Herring allegedly responded to Farris' inquiry by stating that Gue had not been selected due to his back injury and age. *Farris depo.*, p 23. In fact, Gue alleges that Herring made similar statements directly to Gue in front of another officer, Brent Sanders. *Pl.'s depo.*, p. 57. Largely on the basis of these alleged statements by Herring, Gue came to believe that he had been unlawfully discriminated against in the training school selection process. On January 31, 1997 Gue filed charges with the EEOC, claiming age discrimination and disability discrimination. After receiving notice of a right to sue, he filed the instant action on June 29, 1998.

### Timeliness of Filing the Present Action

Gadsden argues that Gue's claims under the ADA and ADEA are time-barred because Gue did not file EEOC charges within 180 days of March, 1996, when Herring originally recommended Couch for the investigator's school. Gue filed his EEOC charge on January 31, 1997, which would only be timely in regard to causes of action arising on or after August 4, 1996 (that is, 180 days prior to January 31, 1997). The court agrees with both parties that the issue turns on whether Gue's claim arose in June, 1996, when Couch and Herring were originally scheduled to attend the investigator school, or in November, 1996, when Farris and Herring were actually sent to the training school instead of Gue. The court finds the latter alternative more appropriate. After the June training was postponed, and after Couch became unavailable for the training, Gadsden had another opportunity to select or deny Gue. Gue alleges that he was denied the November training on the basis of age and disability, and the court finds that his cause of action arose then, at the latest. If discrimination occurred up until November, as Gue clearly alleges, his January EEOC charge was not time-barred. Consequently, neither is the present action time-barred, which was filed within 90 days after Gue's receipt of a notice of right to sue from the EEOC.

### Failure of Gue's Contract Claim

Gue contends that Gadsden's employment policies create a contract with him which has been breached by the alleged conduct about which he complains now. To support his contract claim, Gue directs the court's attention to *Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725 (Ala. 1987)("*Hoffman*"), in which the Alabama Supreme Court considers whether employment policies may constitute a valid offer to enter into a binding unilateral contract. In *Hoffman*, the Alabama Supreme Court regarded the policy's <u>specificity</u> of central significance, asking whether the policy language was specific enough to create a power of acceptance by performance of the employee-offeree. *Id*., at 733-734. Accepting *Hoffman* as binding for present considerations, this court rejects Gue's contract claim for two reasons.

First, Gue only states in purely conclusory fashion that "Under the <u>Hoffman-La Roche</u> test, the defendant's Policies and Directives created an offer to plaintiff for a unilateral contract." *Pl.'s Brief in Opposition*, at 23. Gue's conclusion is unsupported by citation to particular policy statements. Instead, Gue makes vague references to Gadsden's obligations under the purported policies, such as an obligation to post and publicize training opportunities. The court cannot find *Hoffman's* required specificity in the still-undefined policies upon which Gue relies. There are no particular, understandable

policies that would create the alleged contractual obligations upon which Gue relies.

Second, *Hoffman* recognizes that specificity is required as a measure of the employer's <u>intent</u> to make an offer to enter a contract. *Id.* ("whether a proposal is <u>meant</u> to be an offer")(emphasis added). In *Hoffman*, the Alabama Supreme Court clearly carved out an option for employers to disclaim the intent to state a contract offer, saying:

> Indeed, if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook. Thus, this Court has refused to hold the provisions of a handbook enforceable against an employer where the handbook at issue expressly stated the following:
> "This Handbook and the policies contained herein do not in any way constitute, and should not be construed as a contract of employment between the employer and the employee, or a promise of employment."

*Id.*

In the present case, Gadsden's handbook of policies and procedures contains a disclaimer which sufficiently approximates the substance, if not the form or language, of the model disclaimer suggested by *Hoffman, supra*. That handbook states:

> <u>These policies and procedures are for Department use only and do not apply in any civil or criminal proceedings</u>. These policies and procedures should not be construed as the creation of a higher legal standard of safety or care in an evidentiary sense with respect to third party claims. Violations of these policies and procedures will only form the basis for Department administrative and Civil Service Board sanctions.

*Def.'s Evidentiary Submission #5*, June 11, 1999 (emphasis added).

It is axiomatic that no intent to enter a contract can be found where there is no intent to be bound. A contract is not

legally enforceable unless the parties intended that it be legally enforceable when the agreement was entered. If Gadsden's disclaimer statement evidences nothing else, it unequivocally demonstrates that Gadsden never intended its policy to create a contract or an offer to enter a contract which would "apply in any civil or criminal proceedings."

Based on Gue's inability to produce <u>specific</u> "contract-like" policy language, and in consideration of the clear <u>lack of intent</u> by Gadsden to make an offer to enter a binding contract, as evidenced by the disclaimer statement, *supra*, the rule in <u>Hoffman</u> does not apply. Accordingly, the court finds that Gadsden's employment policy did not create contractual obligations to Gue.

<u>Gue's Claims Under ADA and ADEA</u>

Gue presents directs evidence of discriminatory intent on the basis of age and disability. Direct evidence of discrimination is evidence that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Burrell v. Bd. Of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997). The depositions of Gue, Farris, and Sanders support Gue's claim that Herring admitted that Gue was not selected for traffic fatality investigator's training on account of age and disability. *Pl.'s depo.*, at 56-58; *Farris depo.*, at 22-23; *Sanders depo.*, at 15. If their statements are

believed, no inference is necessary to conclude that discrimination occurred. It makes no difference, as Gadsden suggests, that Herring was merely a "low-level" supervisor. *See, e.g., Def.'s Brief in Support of Motion for Summary Judgment*, at 10. Herring was a supervisor with power and authority over Gue, and as such he stood in the shoes of his employer when acting within the scope of his employment, for purposes of the ADEA and the ADA. This is not a case brought under 42 U.S.C. §§ 1981 and/or 1983. If Herring perceived Gue to be disabled, due to a bad back, or if he deemed Gue incapable, due to age, then so, too, did Gadsden perceive. Under the ADA, it makes no difference that Gue may not have been <u>actually</u> disabled. The fact that Herring may have acted discriminatorily against Gue on the basis of a <u>perceived</u> disability is sufficient to trigger ADA protection. *See* 42 U.S.C. § 12102(2).

Because Gue presents direct evidence of discriminatory intent, in order to survive summary judgment scrutiny he must only demonstrate that he has suffered an adverse employment action. In other words, if Gue's evidence is sufficient to allow a reasonably jury to find discrimination on account of age and/or disability, the only question remaining is whether such discrimination rises to an actionable level.[1] The most important

---

[1] The burden-shifting scheme for making out a *prima facie* case of discrimination, on the basis of circumstantial evidence, as set out in

question in the present case lies in ascertaining whether any adverse employment action has taken place. The court confesses difficulty in finding that Gue has suffered <u>adversely</u> on account of his non-selection for traffic fatality investigator school. After all, as Gadsden points out, Gue has not been fired or demoted. He has not suffered a reduction in pay. In fact, he has earned thousands of dollars in overtime pay during each of the last three years. He has not been transferred involuntarily. His job title has not been changed involuntarily, nor have his job responsibilities been redefined involuntarily. He has presented no substantial evidence to show that he has suffered a loss of prestige.

The Eleventh Circuit has addressed the standard for "adverse employment action" on only a few occasions, and never in a case with facts substantially similar to the present action. Nevertheless, the Eleventh Circuit has made clear that "adverse

---

*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny, does not apply here. *See, e.g. Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999). As a result, Gadsden is not entitled to the same benefit of the doubt regarding it's articulation of one or more legitimate, non-discriminatory reasons for Gue's non-selection to investigator training school, at least not to the extent that it would enjoy a benefit of the doubt if only circumstantial evidence had been presented. In contrast to situations implicating *McDonnell-Douglas*, Gadsden's explanation – that it selected first Couch, then Farris, because both were more qualified than Gue – does not shift the burden back to Gue to show that Gadsden's purported reason is really a pretext for discrimination. Because Gue has produced direct evidence, Gadsden must overcome more than a mere *inference* of discrimination. It must overcome direct evidence of discrimination with evidence that it would have taken the same employment action even in the absence of discriminatory intent. *See Eskra v. Provident life & Accident Inc. Co.*, 125 F.3d 1406, 1411 (11th Cir. 1997).

employment action" must be determined from the <u>objective</u> standpoint of a reasonable person, not from the subjective impressions of a complaining employee. *Doe v. Dekalb County School Dist.*, 145 F.3d 1441 (11th Cir. 1998)("Dekalb County"). Therefore, under *Dekalb County*, it is irrelevant whether Gue subjectively **felt** as though Herring's alleged discriminatory intent worked harm to Gue's future career.  Gue's speculation is not enough.  What matters is whether Herring's intent to discriminate resulted in actual, objective adverse action.

Unless a jury were to completely disbelieve Gue, Farris, and Sanders, it would likely conclude that Herring's intent to discriminate did actually result in Gue's non-selection for the investigator school.  This conclusion by itself, however, is not dispositive of Gue's claim, because that same jury would next be called upon to determine whether the discriminatorily motivated act actually adversely affected Gue's terms and conditions of employment.  *Dekalb County* further requires that "[a]ny adversity must be material; it is not enough that a transfer imposes some *de minimis* inconvenience or alteration of responsibilities." *Id.*, at 1453.  This court is tempted to find that no reasonable jury could find in Gue's favor on this last issue.  Admittedly, it is a close call.  In *Dekalb County*, the Eleventh Circuit explained its reluctance to establish a standard out of reach for alleged victims of discrimination, and that explanation

ultimately binds this court:

> It is important not to make a federal case out of a transfer that is *de minimis*, causing no objective harm and reflecting a mere chip-on-the-shoulder complaint. However, it is equally important that the threshold for what constitutes an adverse employment action not be elevated artificially, because an employer's action, to the extent that it is deemed not to rise to the level of an adverse employment action, is removed completely from any scrutiny for discrimination. In other words, where the cause or motivation for the employer's action was clearly its employee's disability, a finding that the action does not rise to the level of an adverse employment action means that the action is not scrutinized for discrimination. An artificially high threshold for what constitutes an adverse employment action would undermine the purposes of the statute permitting discriminatory actions to escape scrutiny. <u>We believe that the purposes of the statute are appropriately served by requiring that fact finder to determine whether a reasonable person would consider the action adverse under all the facts and circumstances</u>.

*Id.*, n. 21, at 1453 (emphasis added). Because at this stage a factual question appears as to whether Gue suffered sufficient "adversity," the court finds that summary judgment on Gue's claims under the ADA and the ADEA is inappropriate. This case therefore will proceed to trial, and the jury will bear the responsibility of determining whether Herring's action, if it occurred as alleged, "adversely" impacted Gue.

A separate and appropriate order will be entered.

DONE this 13th day of July, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE